1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF                    Case No.:  3:20-cv-01414-WQH-JLB
     AMERICA for the Use and
12   Benefit of FACILITIES               **ORDER**
     MECHANICAL
13   CONTRACTORS, INC., a
     California corporation,
14
15                          Plaintiff,

16   v.

17   HEFFLER CONTRACTING
     GROUP, a California corporation;
18   NATIONWIDE MUTUAL
     INSURANCE COMPANY, an
19   Ohio corporation; and DOES 1
     through 10, inclusive,
20
21                          Defendants.

22
     HAYES, Judge:
23
             The matter pending before the Court is the Motion to Compel Arbitration and Stay
24
     Proceedings filed by Defendants Heffler Contracting Group and Nationwide Mutual
25
     Insurance Company.  (ECF No. 8).
26

27

28

I.   **PROCEDURAL BACKGROUND**

On July 23, 2020, Plaintiff United States of America for The Use and Benefit of Facilities Mechanical Contractors, Inc. initiated this action by filing a Complaint against Defendants Heffler Contracting Group ("Heffler"), Alliant Insurance Services, Inc., and DOES 1 through 10, inclusive.  (ECF No. 1).

On August 11, 2020, Plaintiff filed an Amended Complaint against Defendants Heffler, Nationwide Mutual Insurance Company ("Nationwide"), and DOES 1 through 10, inclusive.  (ECF No. 4).  Plaintiff alleges that the federal government named Defendant Heffler as the general contractor for construction of an Emergency Service Center at Fort Hunter Liggett, California. *See id*. at 2-3.  Plaintiff alleges that Defendant "Heffler entered into a written subcontract with [Plaintiff] as the third mechanical subcontractor" on June 20, 2019. *Id*. at 3.  Plaintiff alleges that, "in performing its services, [it] was forced to spend a tremendous and unanticipated overtime and incurred extra expenses . . . due to [Defendant] Heffler's mismanagement of its subcontractors, inability to provide a proper schedule and failure to ensure coordination of the work and subcontractors . . . ." *Id*. at 3-4.  Plaintiff alleges that Defendant Heffler "refus[es] to compensate [Plaintiff] for the extra time and expenses" and "continues to withhold at least $8,697.78 owed to" Plaintiff.  *Id*. at 4.  Plaintiff brings the following four causes of action: (1) breach of contract, (2) quantum meruit, (3) imposition of statutory penalties, and (4) recovery under Mill Act Payment Bond. *See id*. at 5-9.  Plaintiff seeks damages, statutory penalties, attorneys' fees, costs, pre and post-judgment interest, and "[s]uch other and further relief as the Court may deem just and proper." *Id*. at 9.

On October 9, 2020, Defendants Heffler and Nationwide ("Defendants") filed a Motion to Compel Arbitration and Stay Proceedings.  (ECF No. 8).  Defendants contend that section 17(B)(1) of the subcontract between Plaintiff and Defendant Heffler requires arbitration of Plaintiff's claims because Plaintiff's claims arise under or relate to the terms and conditions of the subcontract and do not involve the acts or omission of the owner of the project, the United States Army Corp of Engineers.  On November 2, 2020, Plaintiff

1    filed a Response in opposition.  (ECF No. 13).  Plaintiff contends that section 17(B)(1) of

2    the subcontract between Plaintiff and Defendant Heffler does not require arbitration of

3    Plaintiff's claims because Plaintiff's claims involve the acts or omission of the United

4    States Army Corp of Engineers.  On November 9, 2020, Defendants filed a Reply.  (ECF

5    No. 14).

6    **II.    FACTS**

7        Defendant "Heffler was the general contractor for construction of the federally

8    funded Emergency Services Center project [ ] located at Fort Hunter Liggett."  Castner

9    Decl. ¶ 2, ECF No. 8-3 at 2.  Defendant "Heffler entered into a written subcontract with

10   [Plaintiff] pursuant to which [Plaintiff] agreed to perform mechanical and related work at

11   [Fort Hunter Liggett] in exchange for payment by [Defendant] Heffler . . . ."  *Id.* ¶ 3, ECF

12   No. 8-3 at 2.  "As part of the requirements of [Defendant] Heffler's contract with the owner

13   [of] the [p]roject, [Defendant] Heffler was required to obtain a Miller Act payment bond

14   to provide security for unpaid labor and materials . . . ."  *Id.* ¶ 5, ECF No. 8-3 at 2.

15       Section 17 of the subcontract between Plaintiff and Defendant Heffler addresses

16   dispute resolution procedure.  *See* Ex. B to Amended Complaint, ECF No. 4-3 at 29-30;

17   Ex. 1 to Defendants' Motion, ECF No. 8-1 at 40-41; Ex. 1 to Castner Decl., ECF No. 8-3

18   at 34-35.  Section 17 states that

19   A.    **Preliminary Dispute Resolution Procedure and Agreement to**
20         **Arbitrate**

21         1)    **Disputes Under Prime Contract.** Any dispute resolution
22               procedure in the Prime Contract shall be deemed incorporated in
                 this Subcontract, and shall apply to any disputes arising
23               hereunder, except for disputes not involving the acts, omissions
                 or otherwise the responsibility of the Owner under the Prime
24               Contract, and those which have been waived by the making or
25               acceptance of final payment. Subject to compliance with all
                 applicable laws, including but not limited to those relating to
26               false claims, dispute and claim certifications, and cost and
27               pricing data requirements, Contractor's sole obligation is to
28               present any timely-filed claims by Subcontractor to Owner under

such procedure and, subject to the other provisions of this Subcontract, to pay to Subcontractor the proportionate part of any sums paid by the Owner to which Subcontractor is entitled.

2)   **Settlement Negotiations.** Subject to Prime Contract dispute resolution procedures under Section 17.1.1, and as to disputes not involving the acts, omissions or otherwise the responsibility of the Owner under the Prime Contract, promptly upon notification by the Subcontractor of a dispute, the Contractor and Subcontractor shall meet to informally resolve such dispute. If no resolution is achieved, the parties, prior to the initiation of any action or proceeding under this Section, shall make a good faith effort to resolve the dispute by negotiation between representatives with decision-making power, who, to the extent possible, shall not have had substantive involvement in the matters of the dispute, unless the parties otherwise agree. To facilitate the negotiation, the parties agree either to fashion a procedure themselves or seek the assistance of a person or organization experienced in alternative dispute resolution procedures, such as mediation or other similar procedures.

B.   **Arbitration Procedures.** In the event the Prime Contract contains an arbitration provision or for disputes not involving the acts, omissions or otherwise the responsibility of the Owner under the Prime Contract, or allocation issues pertaining to Section 15.2(a) which were resolved by the trier of fact in any underlying litigation or binding dispute resolution, the following shall apply:

1)   **Notice of Demand.** For arbitration under the Prime Contract, notice of the demand for arbitration shall be filed in writing with the other party to this Subcontract and shall conform to the requirements of the arbitration provision set forth in the Prime Contract. For claims not involving the acts or omission or otherwise the responsibility of the Owner under the Prime Contract, the parties hereto shall submit all disputes arising under or relating to the terms and conditions of this Subcontract to arbitration in accordance with the Construction Industry Rules of the American Arbitration Association then in effect. In either case, the demand for arbitration shall be made within a reasonable time after written notice of the claim, dispute or other matter in question has been given, and in no event, shall it be

made after the date when institution of legal or equitable proceedings based on such claim dispute or other matter in question would be barred by the applicable statute of limitations.

2)   **Award.** The award rendered by the arbitrator(s) shall be final and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction.

3)   **Work Continuation and Payment.** Unless otherwise agreed in writing, Subcontractor shall carry on the work and maintain the Contractor's schedule pending arbitration, and if so, Contractor shall continue to make payments in accordance with this Subcontract.

4)   **Consolidated Arbitration Proceedings.** To the extent not prohibited by their contracts with others, the claims and disputes of Owner, Contractor, Subcontractor and other subcontractors, suppliers and/or material suppliers involving a common question of fact or law shall be heard by the same arbitrator(s) in a single proceeding. In this event, it shall be the responsibility of Subcontractor to prepare and present Contractor's case, to the extent the proceedings are related to this Subcontract. Should Contractor enter arbitration with the Owner or others regarding matters relating to this Subcontract, Subcontractor shall be bound by the result of the arbitration to the same degree as the Contractor.

5)   **No Limitation of Rights or Remedies.** This Section shall not be deemed a limitation of any rights or remedies which Subcontractor may have under any federal or state mechanic's lien laws or under any applicable labor and material payment bonds unless such rights or remedies are expressly waived by it.

Ex. B to Amended Complaint, ECF No. 4-3 at 29-30; Ex. 1 to Defendants' Motion, ECF No. 8-1 at 40-41; Ex. 1 to Castner Decl., ECF No. 8-3 at 34-35.

## III.   CONTENTIONS

Defendants contend that the Federal Arbitration Act requires Plaintiff to arbitrate its claims against Defendant Heffler pursuant to the subcontract between Plaintiff and

1   Defendant Heffler.  Defendants contend that the arbitration agreement is strictly enforced

2   pursuant to the Federal Arbitration Act.  Defendants contend that all of Plaintiff's claims

3   against Defendant Heffler are subject to the arbitration agreement because Plaintiff's

4   claims arise under or relate to the terms and conditions of the subcontract and do not

5   involve the acts or omission of the United States Army Corp of Engineers.  Defendants

6   contend that the Federal Arbitration Act requires a stay pending the outcome of arbitration.

7   Defendants contend that Plaintiff's fourth cause of action pursuant to the Miller Act should

8   be stayed pending the outcome of arbitration.

9         Plaintiff contends that the exclusion language of the dispute resolution section

10  applies and that this matter is excluded from arbitration because Plaintiff's claims involve

11  the acts or omission of the United States Army Corp of Engineers.  Plaintiff contends that

12  the language of the dispute resolution section of the subcontract is ambiguous such that

13  there is no clear agreement of the parties to arbitrate the claims at issue.  Plaintiff contends

14  that the terms of the arbitration agreement are procedurally and substantively

15  unconscionable.

16  **IV.   STANDARD OF REVIEW**

17        The Federal Arbitration Act ("FAA") "was enacted in 1925 in response to

18  widespread judicial hostility to arbitration agreements."  *AT&T Mobility LLC v.*

19  *Concepcion*, 563 U.S. 333, 339 (2011).  Section 2 of the FAA states that

20
> A written provision in any . . . contract evidencing a transaction involving
21  commerce to settle by arbitration a controversy thereafter arising out of such
> contract or transaction . . . shall be valid, irrevocable, and enforceable, save
22  upon such grounds as exist at law or in equity for the revocation of any
> contract.
23

24  9 U.S.C. § 2.  Section 4 of the FAA states that

25
> A party aggrieved by the alleged failure, neglect, or refusal of another to
26  arbitrate under a written agreement for arbitration may petition any United
> States district court which, save for such agreement, would have jurisdiction
27  under title 28, . . . for an order directing that such arbitration proceed in the
> manner provided for in such agreement.
28

1   9 U.S.C. § 4.  Section 3 of the FAA states that

2    If any suit or proceeding be brought in any of the courts of the United States
3    upon any issue referable to arbitration under an agreement in writing for such
     arbitration, the court in which such suit is pending, upon being satisfied that
4    the issue involved in such suit or proceeding is referable to arbitration under
     such an agreement, shall on application of one of the parties stay the trial of
5    the action until such arbitration has been had in accordance with the terms of
6    the agreement . . . .

7   9 U.S.C. § 3.

8       "The basic role for courts under the FAA is to determine (1) whether a valid
9   agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the
10  dispute at issue."  *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013).
11  "If the response is affirmative on both counts, then the [FAA] requires the court to enforce
12  the arbitration agreement in accordance with its terms."  *Chiron Corp. v. Ortho Diagnostic*
13  *Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  The FAA "leaves no place for the exercise
14  of discretion by a district court, but instead mandates that district courts *shall* direct the
15  parties to proceed to arbitration on issues as to which an arbitration agreement has been
16  signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§
17  3, 4).

18      The party moving to compel arbitration has the "burden to provide evidence of the
19  *existence* of an agreement to arbitrate, it is generally sufficient for that party to present a
20  copy of the contract to the court."  *Baker v. Italian Maple Holdings, LLC*, 13 Cal. App. 5th
21  1152, 1160 (2017).  "Once such a document is presented to the court, the burden shifts to
22  the party opposing the motion to compel, who may present any challenges to the
23  enforcement of the agreement and evidence in support of those challenges."  *Id.*  "In
24  keeping with California's strong public policy in favor of arbitration, any doubts regarding
25  the validity of an arbitration agreement are resolved in favor of arbitration."  *Samaniego v.*
26  *Empire Today LLC*, 205 Cal. App. 4th 1138, 1144 (2012).

27

28

## V.   DISCUSSION

Section 2 of the FAA is "the primary substantive provision of the Act" and "reflect[s] both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *Concepcion*, 563 U.S. at 339 (citations omitted). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *Id.* (citations omitted). District courts "apply ordinary state-law principles that govern the formation of contracts to decide whether an agreement to arbitrate exists." *Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017). "Generally, under California law, the essential elements for a contract are (1) [p]arties capable of contracting; (2) [t]heir consent; (3) [a] lawful object; and (4) [s]ufficient cause or consideration." *Id.* at 1284 (alterations in original) (quoting Cal. Civ. Code § 1550).

### a.  Exclusion Provisions of Arbitration Agreement

Defendants contend that all of Plaintiff's claims against Defendant Heffler are subject to the arbitration agreement because all of Plaintiff's claims arise under or relate to the terms and conditions of the subcontract.  Plaintiff contends that the arbitration agreement is inapplicable to this dispute because all claims involving acts or omissions by the owner of the project are excluded from arbitration and this dispute will involve the acts or omissions by the owner.

Section A(1) of the arbitration agreement states that "[a]ny dispute resolution procedure in the Prime Contract shall be deemed incorporated in this Subcontract, and shall apply to any disputes arising hereunder, except for disputes not involving the acts, omissions or otherwise the responsibility of the Owner under the Prime Contract . . . ." Ex. B to Amended Complaint, ECF No. 4-3 at 29; Ex. 1 to Defendants' Motion, ECF No. 8-1 at 40; Ex. 1 to Castner Decl., ECF No. 8-3 at 34.  Section B(1) of the arbitration agreement states that "[f]or claims not involving the acts or omission or otherwise the responsibility of the Owner under the Prime Contract, the parties hereto shall submit all disputes arising under or relating to the terms and conditions of this Subcontract to arbitration in accordance

1    with the Construction Industry Rules of the American Arbitration Association then in

2    effect." Ex. B to Amended Complaint, ECF No. 4-3 at 30; Ex. 1 to Defendants' Motion,

3    ECF No. 8-1 at 41; Ex. 1 to Castner Decl., ECF No. 8-3 at 35.

4              Plaintiff alleges that Defendant "Heffler entered into a written subcontract with

5    [Plaintiff] as the third mechanical subcontractor" on June 20, 2019.  (ECF No. 4 at 3).

6    Plaintiff alleges that, "in performing its services, [it] was forced to spend a tremendous and

7    unanticipated overtime and incurred extra expenses . . . due to [Defendant] Heffler's

8    mismanagement of its subcontractors, inability to provide a proper schedule and failure to

9    ensure coordination of the work and subcontractors . . . ."  *Id*. at 3-4.  The Complaint in

10   this case does not include the United States Army Corp of Engineers as a defendant or any

11   claims against the United States Army Corp of Engineers as the owner of the project.

12   Plaintiff's sole reference to the owner of the project occurs in the Amended Complaint

13   occurs in the following sentence: "On or about June 14, 2017, United States of America by

14   and through the U.S. Army Corp of Engineers issued a Solicitation for construction of

15   Emergency Service Center Fort Hunter Liggett, CA allocating approximately $28 million

16   to construct a new 46,200 sq. ft. emergency center facility at Fort Hunter Liggett, California

17   . . . ."  *Id*. at 2-3.  The Court finds that Plaintiff fails to provide sufficient evidence that this

18   dispute involves the acts or omissions by the owner.  The Court concludes that section B

19   of the arbitration agreement applies to Plaintiff's claims.

20          **b. Ambiguity of Arbitration Agreement**

21          Defendants contend that the arbitration agreement is valid and enforceable because

22   Plaintiff and Defendant Heffler voluntarily entered into the subcontract and consented to

23   resolve their disputes by arbitration.  Plaintiff contends that the dispute resolution section

24   of the subcontract is unenforceable because it is ambiguous.  Plaintiff contends that

25   ambiguous agreements cannot provide the necessary contractual basis for compelling

26   arbitration.  Plaintiff contends that ambiguity negates any actual agreement to arbitrate

27   because a party cannot consent to something it does not understand.  Plaintiff contends that

28

9

1   the dispute resolution section is confusing and contradictory because it contains preambles

2   and references to other agreements and non-existent sections.

3        "When an arbitration provision is ambiguous, [courts] will interpret that provision,

4   if reasonable, in a manner that renders it lawful, both because of our public policy in favor

5   of arbitration as a speedy and relatively inexpensive means of dispute resolution, and

6   because of the general principle that [courts] interpret a contractual provision in a manner

7   that renders it enforceable rather than void." *Pearson Dental Supplies, Inc. v. Superior*

8   *Court*, 48 Cal. 4th 665, 682 (2010); *see Roman v. Superior Court*, 172 Cal. App. 4th 1462,

9   1473 (2009) (citations omitted) ("Even if the language in the Flo–Kem arbitration

10   provision were somehow ambiguous on this point, given the public policy favoring

11   arbitration and the requirement we interpret the provision in a manner that renders it legal

12   rather than void, we would necessarily construe the arbitration agreement as imposing a

13   valid, mutual obligation to arbitrate."). "An interpretation which gives effect is preferred

14   to one which makes void." Cal. Civ. Code § 3541. "A contract must receive such an

15   interpretation as will make it lawful, operative, definite, reasonable, and capable of being

16   carried into effect, if it can be done without violating the intention of the parties." Cal.

17   Civ. Code § 1643.

18        Plaintiff contends that the following provision of the arbitration agreement is

19   ambiguous: "In the event the Prime Contract contains an arbitration provision or for

20   disputes not involving the acts, omissions or otherwise the responsibility of the Owner

21   under the Prime Contract, or allocation issues pertaining to Section 15.2(a) which were

22   resolved by the trier of fact in any underlying litigation or binding dispute resolution, the

23   following shall apply . . . ." Ex. B to Amended Complaint, ECF No. 4-3 at 29; Ex. 1 to

24   Defendants' Motion, ECF No. 8-1 at 40; Ex. 1 to Castner Decl., ECF No. 8-3 at 34.

25   Plaintiff contends that the prime contract does not contain an arbitration provision and that

26   section 15.2(a) of the subcontract does not exist. Plaintiff contends that the provision

27   places the filing party in the position of determining whether the owner of the project is

28   involved in this dispute.

The subcontract states that "[f]or claims not involving the acts or omission or otherwise the responsibility of the Owner under the Prime Contract," section B(1) shall apply and "the parties hereto shall submit all disputes arising under or relating to the terms and conditions of this Subcontract to arbitration in accordance with the Construction Industry Rules of the American Arbitration Association then in effect." Ex. B to Amended Complaint, ECF No. 4-3 at 30; Ex. 1 to Defendants' Motion, ECF No. 8-1 at 41; Ex. 1 to Castner Decl., ECF No. 8-3 at 35. In other words, any disputes between subcontractors not involving the United States Army Corp of Engineers are subject to arbitration. The Court finds that arbitration applies in this case because the Complaint involves a dispute between subcontractors and does not involve the United States Army Corp of Engineers. The Court concludes that this provision of the arbitration agreement is not ambiguous.

Plaintiff contends that the following provision of the arbitration agreement is ambiguous because the prime contract does not contain an arbitration provision: "For arbitration under the Prime Contract, notice of the demand for arbitration shall be filed in writing with the other party to this Subcontract and shall conform to the requirements of the arbitration provision set forth in the Prime Contract." Ex. B to Amended Complaint, ECF No. 4-3 at 30; Ex. 1 to Defendants' Motion, ECF No. 8-1 at 41; Ex. 1 to Castner Decl., ECF No. 8-3 at 35. However, the following sentence states that "For claims not involving the acts or omission or otherwise the responsibility of the Owner under the Prime Contract, the parties hereto shall submit all disputes arising under or relating to the terms and conditions of this Subcontract to arbitration in accordance with the Construction Industry Rules of the American Arbitration Association then in effect." Ex. B to Amended Complaint, ECF No. 4-3 at 30; Ex. 1 to Defendants' Motion, ECF No. 8-1 at 41; Ex. 1 to Castner Decl., ECF No. 8-3 at 35. The Court concludes that the arbitration procedures of the sentence regarding "claims not involving the acts or omission or otherwise the responsibility of the Owner under the Prime Contract" are not ambiguous and apply to this dispute. Ex. B to Amended Complaint, ECF No. 4-3 at 30; Ex. 1 to Defendants' Motion, ECF No. 8-1 at 41; Ex. 1 to Castner Decl., ECF No. 8-3 at 35.

1   Plaintiff contends that the following provision of the arbitration agreement is
2   ambiguous because it nullifies all preceding limitations on the subcontractor: "This Section
3   shall not be deemed a limitation of any rights or remedies which Subcontractor may have
4   under any federal or state mechanic's lien laws or under any applicable labor and material
5   payment bonds unless such rights or remedies are expressly waived by it."   Ex. B to
6   Amended Complaint, ECF No. 4-3 at 30; Ex. 1 to Defendants' Motion, ECF No. 8-1 at 41;
7   Ex. 1 to Castner Decl., ECF No. 8-3 at 35.  The Court concludes that this provision of the
8   arbitration agreement is not ambiguous.

9   ### c. Unconscionability

10   "Unconscionability is ultimately a question of law" for the courts to decide.  *Net*
11   *Glob. Mktg., Inc. v. Dialtone, Inc.*, 217 F. App'x 598, 600 (9th Cir. 2007).  "Courts may
12   find a contract as a whole 'or any clause of the contract' to be unconscionable." *Sanchez v.*
13   *Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (2015) (quoting Cal. Civ. Code, §
14   1670.5(a)).   "Under California law, a contract provision is unenforceable due to
15   unconscionability only if it is both procedurally and substantively unconscionable."
16   *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 981 (9th Cir. 2007).  The
17   procedural element focuses on "oppression or surprise due to unequal bargaining power,"
18   while the substantive element focuses on "overly harsh or one-sided results." *Armendariz*
19   *v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000).  "[A] sliding scale" is
20   applied: "the more substantively oppressive the contract term, the less evidence of
21   procedural unconscionability is required is required to come to the conclusion that the term
22   is unenforceable, and vice versa." *Id*.  Still, "*both* [must] be present in order for a court to
23   exercise its discretion to refuse to enforce a contract or clause under the doctrine of
24   unconscionability." *Id*.  "Because unconscionability is a contract defense, the party
25   asserting the defense bears the burden of proof." *Sanchez*, 61 Cal. 4th at 911.

26   ### i. Procedural Unconscionability

27   Plaintiff contends that the arbitration agreement is procedurally unconscionable.
28   Plaintiff contends that the dispute resolution section of the subcontract requires Plaintiff to

1    abide by the terms of the prime contract between the owner of the project and Defendant

2    Heffler.  Plaintiff asserts that it was not a party to the prime contract and did not participate

3    in its negotiation.  Plaintiff contends that Defendant Heffler forced the terms of the prime

4    contract on Plaintiff on a take-it-or-leave-it basis.  Defendants contend that the arbitration

5    agreement is not procedurally unconscionable.  Defendants contend that the parties had

6    equal bargaining power regarding the subcontract.  Defendants contend that Plaintiff was

7    able to negotiate and had the opportunity to propose revisions to the subcontract.

8    Defendants assert that Plaintiff engaged in negotiations and three rounds of revisions with

9    Defendant Heffler regarding the subcontract.  Defendants contend that the portion of the

10   subcontract that references the prime contract is irrelevant to the arbitration agreement.

11           "Procedural  unconscionability  analysis  focuses  on  oppression  or  surprise."

12   *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006).  "Oppression arises

13   from an inequality of bargaining power that results in no real negotiation and an absence of

14   meaningful choice, while [s]urprise involves the extent to which the supposedly agreed-

15   upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them."

16   *Id*. (alteration in original).

17           Plaintiff's co-owner states in a sworn declaration that "[i]n reviewing the complicated

18   language and various conditions precedent and cross-references of Section 17 of the

19   Subcontract between [Plaintiff] and [Defendant] Heffler . . . , I . . . did not feel that this

20   could be changed or negotiated because it was based on and incorporated the terms of the

21   Prime Contract signed between the United States Army Corp of Engineers as the owner of

22   the [p]roject and [Defendant] Heffler . . . , long before [Plaintiff]'s involvement."  Ladda

23   Decl. ¶ 2, ECF No. 13-1 at 2.  Plaintiff's project manager states in a sworn declaration that

24   he "signed the Subcontract between [Plaintiff] and [Defendant] Heffler . . . on behalf of

25   [Plaintiff]."  Kaliszewski Decl. ¶ 2, ECF No. 13-9 at 2.  Plaintiff's project manager further

26   states that "[i]n reviewing the convoluted language and various prerequisites and cross-

27   references of Section 17 of the Subcontract between [Plaintiff] and [Defendant] Heffler . . .

28   , I . . . did not feel that this could be changed or negotiated because it was based on and

1   incorporated the terms of the Prime Contract signed between the United States Army Corp

2   of Engineers as the owner of the [p]roject and [Defendant] Heffler . . . , long before

3   [Plaintiff]'s involvement." *Id.* ¶ 3, ECF No. 13-9 at 2.

4        The subcontract submitted by Plaintiff and Defendants shows that Plaintiff's project

5   manager initialed or signed every page of the 52-page subcontract.  *See* Ex. B to Amended

6   Complaint, ECF No. 4-3 at 3-53; Ex. 1 to Defendants' Motion, ECF No. 8-1 at 14-64; Ex.

7   1 to Castner Decl., ECF No. 8-3 at 8-58.   The subcontract shows Plaintiff's project

8   manager's initials on the bottom right-hand corner of page three which states in bolded text

9   "This Subcontract has important legal and insurance consequences.  Consultation with an

10  attorney and insurance consultant is encouraged with respect to its completion or

11  modification."  Ex. B to Amended Complaint, ECF No. 4-3 at 5 (emphasis omitted);  Ex.

12  1 to Defendants' Motion, ECF No. 8-1 at 16 (emphasis omitted); Ex. 1 to Castner Decl.,

13  ECF No. 8-3 at 10 (emphasis omitted).   The subcontract shows Plaintiff's project

14  manager's initials on the bottom right-hand corners of pages 27 and 28 on which the dispute

15  resolution procedure section appears.  *See* Ex. B to Amended Complaint, ECF No. 4-3 at

16  29-30; Ex. 1 to Defendants' Motion, ECF No. 8-1 at 40-41; Ex. 1 to Castner Decl., ECF

17  No. 8-3 at 34-35.  The signature page of the subcontract states that "This Subcontract has

18  important legal and insurance consequences. Consultation with an attorney and insurance

19  consultant is encouraged with respect to its completion or modification."   Ex. B to

20  Amended Complaint, ECF No. 4-3 at 33 (emphasis omitted); Ex. 1 to Defendants' Motion,

21  ECF No. 8-1 at 44 (emphasis omitted); Ex. 1 to Castner Decl., ECF No. 8-3 at 38 (emphasis

22  omitted).  On the signature page of the subcontract, Plaintiff's project manager's signature,

23  printed name, and title appear as well as the date June 20, 2019.  *See* Ex. B to Amended

24  Complaint, ECF No. 4-3 at 33; Ex. 1 to Defendants' Motion, ECF No. 8-1 at 44; Ex. 1 to

25  Castner Decl., ECF No. 8-3 at 38.

26       Defendant Heffler's Senior Design Build Program Manager states in a sworn

27  declaration that he "participated in negotiation of the Subcontract . . . ."  Castner Decl. ¶ 3,

28  ECF No. 8-3 at 2.  Plaintiff's project manager wrote his initials on the pages of the

1    arbitration agreement, affirming that he reviewed it.  *See, e.g.*, *Dominguez v. Stone Brewing*

2    *Co., LLC*, No. 20-cv-251-WQH-BLM, 2020 WL 3606396, at \*6 (S.D. Cal. July 2, 2020)

3    ("Dominguez wrote his initials next to the arbitration agreement, affirming that he

4    reviewed it.").  The arbitration agreement is not hidden in the subcontract; the section

5    heading is in all capital letters, bolded, and enlarged font.  *See* Ex. B to Amended

6    Complaint, ECF No. 4-3 at 29; Ex. 1 to Defendants' Motion, ECF No. 8-1 at 40; Ex. 1 to

7    Castner Decl., ECF No. 8-3 at 34.  The provisions of the arbitration agreement are in the

8    same font and size as the rest of the subcontract.  *See* Ex. B to Amended Complaint, ECF

9    No. 4-3 at 29-30; Ex. 1 to Defendants' Motion, ECF No. 8-1 at 40-41; Ex. 1 to Castner

10   Decl., ECF No. 8-3 at 34-35.  The Court concludes that Plaintiff has failed to make an

11   adequate showing of procedural unconscionability necessary to render the arbitration

12   agreement in the subcontract unenforceable.  *See, e.g.*, *Kilgore*, 718 F.3d at 1059 ("Nor is

13   the arbitration provision procedurally unconscionable. . . .  Nor was the arbitration clause

14   buried in fine print in the Note, but was instead in its own section, clearly labeled, in

15   boldface."); *Sherman v. RMH, LLC*, No. 13cv1986–WQH–WMc, 2014 WL 30318, at \*8

16   (S.D. Cal. Jan. 2, 2014) ("As discussed above, the arbitration provision is not hidden in the

17   Contract; it is referenced in boldface type close to Plaintiff's signature line, and the clause

18   itself is set out in a prominent fashion on the reverse side of the one-page contract.  The

19   Court finds that Plaintiff has failed to make an adequate showing of unconscionability

20   necessary to render the arbitration clause in the Contract unenforceable."); *Velazquez*, 2013

21   WL 4525581, at \*6 (alterations in original) (citations omitted) ("The Court finds that

22   Plaintiff had a 'meaningful opportunity to opt out of the arbitration provision when signing

23   the agreement and still preserve . . . her job.'  The Court finds that the option to opt-out

24   was not 'buried in fine print . . . , but was instead . . . , clearly labeled, in boldface.'  The

25   Court finds that the Agreement is not procedurally unconscionable.").

26                            **ii.  Substantive Unconscionability**

27          Plaintiff contends that the arbitration agreement is substantively unconscionable.

28   Plaintiff contends that Defendant Heffler unlawfully included certain provisions in the

1    dispute resolution section of the subcontract.  Plaintiff contends that Defendant Heffler
2    imposed a harsh and oppressive condition on Plaintiff by subjecting Plaintiff to the terms
3    of the prime contract.  Plaintiff contends that it was forced to accept the unlawfully included
4    provisions and the terms of the prime contract.  Defendants contend that the arbitration
5    agreement is not substantively unconscionable.  Defendants contend that the arbitration
6    agreement is bilateral and applies equally to Plaintiff and Defendant Heffler.  Defendants
7    assert that Plaintiff fails to establish the relationship between the allegedly unlawful
8    provisions of the dispute resolution section of the subcontract and the arbitration agreement.

9         Substantive unconscionability focuses "on overly harsh or one-sided results."
10   *Sanchez*, 61 Cal. 4th at 910.  The California Supreme Court has identified the following
11   formulations of substantive unconscionability: "overly harsh", "unduly oppressive", "so
12   one-sided as to shock the conscience", and "unfairly one-sided".  *Id*. at 910-11.  The
13   California Supreme Court has stated that there is no "conceptual difference among these
14   formulations" because "[a]ll of these formulations point to the central idea that
15   unconscionability doctrine is concerned not with a simple old-fashioned bad bargain, but
16   with terms that are unreasonably favorable to the more powerful party." *Id*. at 911 (citations
17   omitted).  "[T]he paramount consideration in assessing conscionability is mutuality."
18   *Nagrampa*, 469 F.3d at 1281 (alteration in original).  "California law requires an arbitration
19   agreement to have a 'modicum of bilaterality.'"  *Id*. (quoting *Armendariz,* 24 Cal. 4th at
20   117).   "[A]rbitration provisions that are unfairly one-sided are substantively
21   unconscionable."   *Id*.   Furthermore, "a claim of unconscionability often cannot be
22   determined merely by examining the face of the contract, but will require inquiry into its
23   setting, purpose, and effect."  *Perdue v. Crocker Nat'l Bank*, 38 Cal. 3d 913, 926 (1985).

24        Plaintiff's co-owner states in a sworn declaration that "[i]n reviewing the complicated
25   language and various conditions precedent and cross-references of Section 17 of the
26   Subcontract between [Plaintiff] and [Defendant] Heffler . . . , I did not fully understand the
27   Dispute Resolution Procedure of the Subcontract . . . ."  Ladda Decl. ¶ 2, ECF No. 13-1 at
28   2.  Plaintiff co-owner further states that "[i]n approving this Subcontract on behalf of

1  [Plaintiff], I did not understand the Dispute Resolution Procedure to mean that any and all

2  claims between [Plaintiff] and [Defendant] Heffler must be arbitrated, because the

3  Subcontract provided various exclusions to the obligation to arbitrate." *Id*. ¶ 3, ECF No.

4  13-1 at 2.

5  Plaintiff's project manager states in a sworn declaration that he "signed the

6  Subcontract between [Plaintiff] and [Defendant] Heffler . . . on behalf of [Plaintiff]."

7  Kaliszewski Decl. ¶ 2, ECF No. 13-9 at 2.  Plaintiff's project manager further states that

8  "[i]n reviewing the convoluted language and various prerequisites and cross-references of

9  Section 17 of the Subcontract between [Plaintiff] and [Defendant] Heffler . . . , I did not

10  fully understand the Dispute Resolution Procedure of the Subcontract . . . ." *Id*. ¶ 3, ECF

11  No. 13-9 at 2.  Plaintiff's project manager further states that "[i]n signing on behalf of

12  [Plaintiff], it was not my understanding that the Dispute Resolution Procedure meant that

13  all claims between [Plaintiff] and [Defendant] Heffler must be arbitrated, because the

14  Subcontract provided lots of different exclusions to arbitration and called for arbitration

15  only if the Prime Contract had an arbitration requirement." *Id*. ¶ 4, ECF No. 13-9 at 2.

16  "Plaintiff[] appear[s] to suggest that Defendants were required to present evidence

17  with respect to their motion to compel to the effect that [Plaintiff] understood the [provisions

18  of the arbitration agreement]." *Baker v. Italian Maple Holdings, LLC*, 13 Cal. App. 5th

19  1152, 1162 n.6 (2017).  "However, it is well established that a party who signs a document

20  is presumed to have read it and to understand its contents." *Id*.  "It would be Plaintiff[']s[]

21  burden to overcome this presumption; Defendants bore no burden to present affirmative

22  evidence that the [provisions] were explained to [Plaintiff] or that [Plaintiff] understood

23  them, or to otherwise preemptively negate any affirmative defense that Plaintiff[] might

24  have to the enforcement of the agreement[]." *Id*.

25  The Court finds that the arbitration agreement is not "overly harsh", "unduly

26  oppressive", "so one-sided as to shock the conscience", or "unfairly one-sided". *Sanchez*,

27  61 Cal. 4th at 910-11.  The Court finds that the arbitration agreement is not substantively

28  unconscionable because it applies mutually to Plaintiff and Defendants and has the requisite

"modicum of bilaterality." *Nagrampa*, 469 F.3d at 1281 (quoting *Armendariz,* 24 Cal. 4th at 117).  The Court concludes that Plaintiff has failed to make an adequate showing of substantive unconscionability necessary to render the arbitration agreement in the subcontract unenforceable.  *See, e.g.*, *Toma v. Bankers Life & Cas. Co.*, No. 18-cv-2046-WQH-MSB, 2019 WL 4229754, at \*9-10 (S.D. Cal. Feb. 25, 2019) (citations omitted) ("Plaintiff's assertions regarding lack of opportunity to negotiate, ask questions, or consult an attorney do not demonstrate substantive unconscionability.   Plaintiff's assertions regarding lack of meaningful choice to sign the Agreement do not demonstrate substantive unconscionability. . . .  Plaintiff's assertions that the Agreement was a standardized fill-in-the-blank form drafted only by Defendants do not demonstrate substantive unconscionability.   Plaintiff fails to demonstrate that the Agreement is substantively unconscionable.").

## VI.    CONCLUSION

IT IS HEREBY ORDERED that the Motion to Compel Arbitration and Stay Proceedings filed by Defendants Heffler Contracting Group and Nationwide Mutual Insurance Company (ECF No. 8) is GRANTED.  Pursuant to 9 U.S.C. § 4, the parties are directed to proceed to arbitration in accordance with the terms of the arbitration agreement. Pursuant to 9 U.S.C. § 3, this action is STAYED pending arbitration.

Dated:  January 4, 2021

Hon. William Q. Hayes
United States District Court

3:20-cv-01414-WQH-JLB